LOONSK BROS., INC., and SEVENTY-FIVE CENT CLEANERS, INC.,
Appellants, *v.* SINCLAIR MOTOR CORP., Respondent.

Fourth Department, May 4, 1938.

*Edward H. Wolkind,* for the appellants.

*Abraham Roth,* for the respondent.

LEWIS, J. The amended complaint sets forth a cause of action for a breach of warranty by the defendant in connection with a sale to plaintiffs of eight light delivery trucks. Upon the trial defendant conceded that the trucks which it had sold and delivered to the plaintiffs were of 1935 model, thus narrowing the issues to a determination of plaintiffs' claim that the defendant had agreed to deliver trucks of 1936 model and so warranted those which were delivered.

At the close of the proof submitted by both parties the trial justice directed a verdict in favor of the defendant upon two grounds: (1) That the contract did not call for the delivery of 1936 model trucks, and (2) that there was a failure by plaintiffs to prove that they had suffered damage by the alleged breach of warranty. We disagree with that ruling.

The plaintiff corporations conduct retail cleaning establishments in the city of Buffalo. A short time prior to October 5, 1935, Nathan Loonsk, an officer of both corporations, was solicited by a representative of the defendant whose effort was to sell to plaintiffs eight new Dodge delivery trucks of one-half ton rated capacity. In the proof of negotiations which led to a written contract between the parties there is ample evidence, received without objection, from which a jury might have found that Mr. Loonsk, acting for the plaintiffs, repeatedly stated to defendant's representative that if new trucks were to be purchased by the plaintiffs they were to be of the 1936 model. It also appears from the testimony of Mr. Loonsk that in answer to his statement of plaintiffs' requirements, the defendant's representative replied: " When they [defendant] delivered the trucks they would be 1936 trucks." The testimony of Mr. Loonsk is corroborated by a bookkeeper who was present during the negotiations and by proof of the following incident: When defendant's representative brought to Mr. Loonsk eight licenses which he had procured for the trucks, each license was applicable to a truck of 1935 model. Mr. Loonsk noticed this at once and in refusing to accept them " called his [defendant's representative] attention to the fact that the cards were marked 1935 instead of 1936." To this statement the defendant's agent is said to have replied: " I'll take those back, there has been some clerical error." Thereupon he took back the licenses applicable to " 1935 " trucks and returned with eight licenses, which are of record before us, on each of which the " year " of the truck to be licensed is stated to be " 1936."

Meantime, on October 5, 1935, a written contract had been signed by Mr. Loonsk acting on behalf of the plaintiffs for the purchase from defendant of eight new trucks for the total purchase price of $5,576. Payment was thereafter made in accord with the contract — $3,250 in cash and the balance of $2,326 by plaintiffs delivering to defendant eight used trucks.

The written contract described the new trucks thus purchased as " Model K C L," with no reference whatever to 1935, 1936 or any other year as descriptive of the model. Mr. Loonsk testified, without objection, that he had no knowledge that the symbol " K C L " referred to trucks of the model of 1935, as now claimed

by the defendant. He asserts that he relied upon representations by defendant's agent that the only trucks which plaintiffs had contracted to purchase and which the defendant was to deliver were of the model of 1936.

Assuming, without deciding, that the written contract of October 5, 1935, may have integrated prior negotiations between the parties, such an integration does not exclude as a competent factor in the determination of this case extrinsic evidence given by plaintiffs' officer, Mr. Loonsk, which bears directly upon an ambiguity which appears upon the face of the written agreement. " Evidence as to the circumstances surrounding the execution of a contract may be given, where its terms are ambiguous. To discover the meaning of the parties we may place ourselves, as far as possible, in their situation when they executed the instrument." (*Ayers* v. *Palatine Ins. Co.*, 234 N. Y. 334, 337.) " Evidence to explain an ambiguity * * * or show the meaning of technical terms * * * places the court in the position of the parties when they made the contract and enables it to appreciate the force of the words they used in reducing it to writing. It is received where doubt arises upon the face of the instrument as to its meaning, not to enable the court to hear what the parties said, but *to enable it to understand what they wrote, as they understood it at the time*. Such evidence is explanatory and must be consistent with the terms of the contract." (*Thomas* v. *Scutt*, 127 N. Y. 133, 141; *Mullen* v. *Washburn*, 224 id. 413, 421. Cf. 3 Williston on Contracts [Rev. ed.], § 612, p. 1759; Richardson on Evidence [5th ed.], §§ 442, 443.)

One of the chief objects of our present inquiry is to ascertain the intention of the contracting parties. There is nothing in the symbol " K C L," either standing alone or when considered in the context in which it is found in the written contract, which indicates that it is descriptive of trucks of the yearly model of 1935.

It is obviously a technical symbol which requires definition to make its meaning clear. Without knowing the meaning which the symbol conveyed to the parties themselves we cannot give effect to their intention as expressed through the medium of their contract. (*Stroud* v. *Frith*, 11 Barb. 300, 301; *Collender* v. *Dinsmore*, 55 N. Y. 200, 205, 206.) The symbol thus became a proper subject of explanatory parol evidence — " to enable [the court] to understand what [the parties] wrote as they understood it at the time." (*Mullen* v. *Washburn, supra*, p. 421.)

We believe that the evidence given by Mr. Loonsk, and received without objection — that he had no knowledge that the symbol " K C. L " referred to trucks of the yearly model of 1935 — was

sufficient, when considered with other evidence in the case, to present a question of fact whether representations amounting to warranties were made by defendant's agent with which defendant failed to comply when it delivered to plaintiffs eight trucks each of which was concededly a 1935 model.

Likewise we find evidence from which the jury could have determined the amount of damages which the plaintiffs sustained by the alleged breach of warranty by the defendant. " The measure of damages for breach of warranty is the difference between the value of the goods delivered and the value the goods would have had if they had conformed to the contract." (*Bond Electric Corp.* v. *Gold Seal Elec. Co.*, 271 N. Y. 461, 463.) The elements of damage within that definition are clearly to be found in the record. There is testimony from which a jury could have found that the value on a given date of a new 1936 model Dodge one-half ton delivery truck was twenty-five per cent greater than a new truck of the same type and made by the same manufacturer but of 1935 model.

The judgment from which appeal is taken should be reversed on the law and a new trial granted, with costs to the appellants to abide the event.

All concur. Present — SEARS, P. J., CROSBY, LEWIS, CUNNINGHAM and DOWLING, JJ.

Judgment reversed on the law and a new trial granted, with costs to the appellants to abide the event.